UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHAWN BERGER,

        Plaintiff,

v.                          CASE No. 8:14-CV-97-T-TGW

CAROLYN COLVIN, Acting
Commissioner of Social Security,

        Defendant.

_____

## O R D E R

The plaintiff in this case seeks judicial review of the denial of his claim for supplemental security income payments.[1] Because the law judge's assessment of the records of the plaintiff's primary care physician is not reasonable, the Commissioner's decision will be reversed and the matter remanded for further proceedings.

### I.

The plaintiff, who was forty-one years old at the time of the most recent administrative hearing and who has the equivalent of a high school

_____

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 16).

education, has worked as an automobile detailer, automobile body repairer, and automobile courier (Tr. 22, 23, 271, 523).   He filed a claim for supplemental security income payments, alleging that he became disabled due to a mental problem; knee, hip and ankle problems; and asthma  (Tr. 303). The claim was denied initially and upon reconsideration.

The plaintiff, at his request, then received a _de novo_ hearing before an administrative law judge (Tr. 70-96).   In a decision dated September 22, 2010, the law judge found that the plaintiff had severe impairments of status post cervical fusion and lumbar laminectomy and discectomy, status post left knee surgeries, depression and anxiety (Tr. 112). The law judge determined that the plaintiff retained the residual functional capacity to perform a limited range of light work (Tr. 116).  Based on the testimony of a vocational expert, the law judge found that, although the plaintiff could not return to prior work, there were other jobs in the national economy that the plaintiff could perform and therefore ruled that he was not disabled (Tr. 118-19).

The plaintiff appealed that determination to the Appeals Council, which remanded the case for the law judge to give more consideration to the

plaintiff's mental status, his maximum residual functional capacity, and, if necessary, to obtain supplemental evidence from a vocational expert regarding the effect of the plaintiff's limitations upon his occupational opportunities (Tr. 127-28).

Upon remand, the same law judge held another administrative hearing, at which the plaintiff and a vocational expert testified (Tr. 33-69). The law judge found that the plaintiff had severe impairments of "status post cervical fusion with residual chronic right shoulder and arm pain" (Tr. 15). The law judge determined that the plaintiff (Tr. 17):

> has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he could occasionally stoop, kneel, crouch & crawl and climb ramps and stairs, but cannot climb ladders, ropes or scaffolds. He could frequently reach, handle and feel with the right upper extremity but should avoid concentrated exposure to temperature extremes, and he should avoid working at heights. The claimant could perform simple (tasks learned through a simple on the job demonstration or through 30 days of training) and routine (tasks performed in the same way or a similar manner each time) tasks.

The law judge concluded that these limitations prevented the plaintiff from performing past work (Tr. 22). However, based on the testimony of a

vocational expert, the law judge concluded that there are jobs that exist in significant numbers in the national economy that the plaintiff can perform, such as table worker, fruit distribution, and counter clerk  (Tr. 23-24). Consequently, the law judge found that the plaintiff was not disabled (Tr. 24). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. 1382c(a)(3)(A).  A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C.

405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence,

but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

The plaintiff argues that (1) substantial evidence does not support the law judge's finding that the plaintiff did not complain of pain to his treating physician, (2) the law judge failed properly to evaluate the opinions of his treating physician, and (3) the law judge's determination of the plaintiff's mental impairments is not supported by substantial evidence (Doc. 17, pp. 16, 18, 24).

The focus of the plaintiff's first argument is that substantial evidence does not support the law judge's "finding that [the plaintiff] made numerous denials of musculoskeletal symptoms including neck and shoulder pain" to his treating physician, Dr. Taha Dias (id., p. 16). The plaintiff argues that this finding was erroneous because the narrative section of each treatment record documents the plaintiff's complaints to Dr. Dias of musculoskeletal

pain and alleged functional limitations (id., pp. 16-18).   That contention has merit. Furthermore, because the law judge relies on that erroneous finding in, among other things, discounting the treating physician's opinion, a remand of this matter is warranted.

Dr. Dias, who has been the plaintiff's primary treating physician for several years, opined that the plaintiff is unable to work.  Thus, Dr. Dias stated in a treatment record dated September 3, 2008, that the plaintiff was "unable to work" (Tr. 637), and opined in correspondence dated October 28, 2008, that the plaintiff has been unable to work due to degenerative joint disease of the cervical spine and left knee osteoarthritis (Tr. 688). Additionally, in a Physical Functional Capacity Assessment Form dated April 30, 2010 ("the Form"), Dr. Dias opined that the plaintiff has functional limitations that are essentially disabling (Tr. 722-23).  For example, Dr. Dias indicated in the Form that the plaintiff can sit, stand and walk for only one hour each during a workday, he cannot lift more than five pounds, and would be absent more than three times monthly due to his impairments (id.).

Opinions from treating physicians should be given substantial or considerable weight unless there is good cause for not giving them such

weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11ᵗʰ Cir. 2004). Good

cause exists when the treating physician's opinion is not bolstered by the

evidence, the evidence supports a contrary finding, or the opinion is

conclusory or inconsistent with the physician's own medical records. Lewis

v. Callahan, 125 F.3d 1436, 1440 (11ᵗʰ Cir. 1997).

The law judge summarized Dr. Dias's opinions (Tr. 19), and

stated in this regard (Tr. 22):

> The undersigned ... affords little weight to the
> physical assessment of Dr. Dias in Exhibit 14F
> because it is inconsistent with the claimant's self-
> reports of controlled pain and numerous denials for
> musculoskeletal symptoms.... Similarly, the
> undersigned affords little weight to the inability to
> work statement of Dr. Dias in Exhibit 34F because
> it is inconsistent with her [sic] treatment records,
> which document the claimant's consistent denials
> for any musculoskeletal symptoms including neck
> and shoulder pain. Moreover, Dr. Dias's inability
> to work statement contradicts her treatment
> records, which only document decreased cervical
> range of motion. Finally, the statement is
> inconsistent with the claimant's numerous
> activities of daily living including his ability to
> drive and operate video gaming controls (Exhibits
> 30F & 36F).

Thus, in discounting Dr. Dias's opinion, the law judge emphasizes that Dr.

Dias's records lack complaints of musculoskeletal symptoms (Tr. 22).

        The law judge based this finding upon a computer checklist ROS

(review of symptoms) contained in the treatment notes (see Tr. 19, n.2). The

ROS lists multiple systems (such as neurologic, psychiatric, musculoskeletal),

and a list of symptoms beside each system. Ostensibly, the medical provider

asks the patient whether he is experiencing any of those symptoms, and a

"Yes" or "No" is typewritten beside each symptom (see, e.g., Tr. 1077-78).

For example, as pertinent here, the following was listed under ROS (Tr.

1078):

> Musculoskeletal
> Limitation in Motion: No.  Muscle Or Joint Pain:
> No.   Muscle  Weakness: No. Neck Pain:  No.
> Backache: No.  Shoulder Pain: No.  Swelling Or
> Redness in Joints: No.

The law judge relied upon these "No" responses in the ROS to conclude that

the plaintiff denied to Dr. Dias having musculoskeletal pain or functional

limitations throughout 2010 and 2011 (Tr. 19). Notably, "No" is listed beside

every symptom for every system in the ROS (see, e.g., Tr. 1043-44, 1077-78;

1096-97).  On its face, the ROS responses do not make sense.  Thus, the

notion that the plaintiff continued to regularly see Dr. Dias without reporting any symptoms and that Dr. Dias continued to prescribe narcotic pain medication, such as Percocet and Oxycodone (see, e.g., Tr. 1086, 1089), in the absence of the plaintiff reporting pain, is unreasonable.

Furthermore, when each of the treatment notes referenced by the law judge is reviewed in context, it is clear that the ROS was not done, not recorded correctly, or simply repeated from a computer data-base, because each of those treatment records show that the plaintiff did report to Dr. Dias musculoskeletal symptoms, a narrative of which is contained in the HPI (history of present impairment) section at the top of the first page of each treatment note.

Thus, although the ROS listed "No" beside every musculoskeletal symptom in the treatment notes cited by the law judge, those same treatment notes document that the plaintiff reported:

"still has pain in the left thigh, knee and ankle getting worse not relieved on current regimen. Pt has difficulty getting dressed and functioning due to pain" (Tr. 1077, 1084);

"Pt states neck is worse than prior to surgery.  Pain an[d] stiffness in neck... Pain not controlled with current percocet dose." (Tr. 1087);

"Pt continues to have feelings of anger and frustration due to inability to do things he used to do, due to severe pain not controlled on current regimen.  Pt has complaints of swelling in left knee." (Tr. 1090);

"Continues to have chronic pain, difficulty with getting dressed on some days due to pain." (Tr. 1096);

"Pt continues to have low back and neck pain..." (Tr. 1040);

"Pain in the neck and low back unbearable..." (Tr. 1046);

"Pt is upset because Oxycodone discontinued.  Pt states having severe pain." (Tr. 1043).

In other words, the law judge, for example, cited to a March 2011 treatment note which indicates "No" for musculoskeletal symptoms in the ROS (Tr. 19, n.2), but the previous page of that treatment note states that the plaintiff reported "[p]ain in the neck and low back [are] unbearable." (Tr. 1046).[2]  In

---

[2] Another example which shows that the ROS is patently incorrect is a treatment note dated November 1, 2010, in which the plaintiff reported "increasing anxiety attacks," but the ROS states "No" for Anxiety (Tr. 1096, 1097).

sum, because the treatment notes cited by the law judge contained the plaintiff's specific complaints of musculoskeletal symptoms, it was unreasonable for the law judge to conclude that the plaintiff denied such complaints (Doc. 17, p. 18).

Furthermore, Dr. Dias documented in those treatment notes his observations of abnormalities of the musculoskeletal system, such as back tenderness and positive straight leg raises bilaterally, and tenderness and decreased range of motion in the cervical spine (see, e.g., Tr. 1078, 1082, 1098). The treatment notes, additionally, reflected diagnoses of musculoskeletal disorders and prescriptions for multiple medications to relieve musculoskeletal symptoms. Therefore, the law judge's finding that the plaintiff denied complaints of pain to Dr. Dias is also irreconcilable with the overall record.

The Commissioner argues that the law judge "reasonably construed Dr. Dias's exams" (Doc. 18, pp. 9-10). In this connection, the Commissioner argues that there is "no indication that Dr. Dias consistently failed to accurate[ly] record Plaintiff's statements" (id., p. 10). However, as discussed above, the record is not reasonably susceptible of the conclusion

that the ROS accurately recorded the plaintiff's complaints because the ROS markings conflict in those same treatment notes with the narrative of the plaintiff's complaints, the findings on physical examinations, and the treatment prescribed by Dr. Dias.

The Commissioner also attempts to reconcile the inconsistency between the plaintiff's narrative complaints and the "No" responses in the ROS, speculating that "[i]t is quite reasonable that Plaintiff did not complain of any limitations prior to Dr. Dias testing Plaintiff in each area" (id.). This speculation is unpersuasive. Thus, the HPI is listed at the beginning of the treatment note where the medical provider documents the patient's complaints that are elicited at the beginning of the appointment (see, e.g., Tr. 1077). Regardless, the plaintiff's speculative assertion does not make reasonable the law judge's finding that the plaintiff did not complain about musculoskeletal symptoms to Dr. Dias when in fact he did.

The Commissioner notes further that the law judge is the fact finder, see 20 C.F.R. 416.946(c) and, therefore, the issue is "not whether some evidence might support another interpretation, but whether substantial evidence supported the ALJ's decision" (Doc. 18, p. 10). However, that

principle is inapposite here because, for the reasons explained above, the evidence is not reasonably susceptible of multiple interpretations, and the law judge's interpretation of the evidence is patently unreasonable.·

Finally, because of the emphasis the law judge placed on this erroneous factual finding, it cannot be said that it did not affect the law judge's determination of the weight he gave to Dr. Dias's opinions. Thus, the law judge mentions in the decision no less than six times that the plaintiff denied to Dr. Dias having musculoskeletal symptoms.

Thus, as indicated, the law judge referenced it twice in discounting the weight given to Dr. Dias's opinion (Tr. 22). Furthermore, in summarizing treatment records from the Jaycare Medical Center where Dr. Dias practices, the law judge stated (Tr. 19, n.2, citing Ex. 30F, pp. 5, 8, 11, 42, 45, 49, 52, 55, 61):

> Notably, on review of systems [the plaintiff] denied limitation in motion, muscle or joint pain, neck pain, shoulder pain, swelling or redness in joints. ... Moreover, his treatment records throughout 2010 and 2011 document his denials for any musculoskeletal or psychiatric complaints.

Moreover, in discounting the plaintiff's credibility, the law judge states that the plaintiff's "statements are inconsistent with his prior denials for neck pain, limited motion, shoulder pain, and muscle and joint pain throughout 2010 and 2011 (Exhibit 36F)" (Tr. 21). Additionally, the law judge cites to the plaintiff's "numerous denials for neck and shoulder pain and muscle and joint pain" in explaining the significant weight given to the non-examining reviewing physician's opinion that the plaintiff could perform light work (Tr. 22). In sum, due to the emphasis the law judge placed on this erroneous finding, it cannot be concluded that it is harmless error. See Dial v. Commissioner of Social Security, 403 Fed. Appx. 420 (11th Cir. 2010) (errors are harmless when they are irrelevant to the law judge's determination). Accordingly, the matter must be remanded.

The plaintiff, as indicated, asserted other challenges to the law judge's decision. However, in light of the remand, which will result in a new decision, it is appropriate to pretermit those arguments.

It is, therefore, upon consideration

ORDERED:

That the Commissioner's decision is hereby **REVERSED**, and the matter is **REMANDED** for further consideration.  The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 27ᵗʰ day of February, 2015.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE